Good morning, your honors. Nicolette Glaser appearing on behalf of the appellant petitioners in this matter the Sentosa family. I would like to reserve about five minutes of my time if it's acceptable to the court. May it please the court. The court should reverse the district court decision and remand these non-court habeas for decision on the merits in accordance with section 2243. A significant aspect that tensed the district court decision was the court's view that in order to assert the habeas, immigration related habeas, the individual must be in detention. And it was respectfully submitted that particular reasoning is not supported either by this court's decision in the Supreme Court's decision considering restrictions based on orders of supervision. Ms. Glaser, can I, can I, can I, I've got some factual questions that I think will help me as we go through this and I want to maybe we're using terms in different ways. Your clients remain undetained? That is correct, they are not detained. They're not detained and they're still subject to the conditions of the 1231A releases? Yes, your honor, they are subject. They continue to be required to appear before an officer and comply with all the restrictions. Yeah, and so the only negative thing that's happened to them since being placed on 1231 release is the refusal of the government to continue the stay of removal. Am I, am I negative governmental action? I know, I know you claim that they've, you know, obviously suffered from this. Well, the only governmental action that was taken against them, if I understand the question, is after several years of providing them with a state of removal, then declining to stay so and directing them to appear for the final order with the understanding that they can take them into custody at any time. Well, that's what it, see that's what I'm having trouble finding in this record. I know that, I know that the government refused to extend the stay, but I don't find, all I find is that in order that they report to the, to an immigration officer on, well in 2018 and then they were asked to come back in 2019, were they asked to report in order to be Well, Your Honor, they were not issued a bag and baggage letter. So they were never told, you know, we are preparing, start packing your bags, you have to leave. They never were provided that notice. They were provided, they were denied the opportunity to apply even for a stay of removal. And again, stay of removal. No, I understand that. I'm just trying to figure out the facts here. So they were never told by the government through something like a bag and baggage letter, we're preparing to detain you or we're preparing to remove you. They were simply told you must report. It looked like yearly. I don't know whether things happened since 2019. They were told you must report periodically to an immigration officer. Is that, is that fair? That is correct, Your Honor. That's the order of supervision plus the additional restrictions that are placed on any individual. In this particular case, I believe they were told you need to appear for the final order of, for your final supervised release appointment. And... Well, that's why I'm having difficulty. I don't find that in this record. Maybe I'm missing it. Well, there is no record. I'm trying to figure out, and let me just tell you why this is of interest to me, trying to figure out whether your clients faced imminent detention or removal, or whether or not they're just people who the government has put on this extended period of, of 1231A release, and it's just asking to report it every once in a while. So it might make a difference to me whether it's one or the other. So tell me what there is in this record that suggests that your clients face something that might change their current situation. Your Honor, at the time the complaint was filed, the applicant believed that they will be detained on their next hearing and the reason for that was the statement that was made to them and what happened to their son Michael, who was summoned to appear for a regular check-in, and he was detained at the time. His DACA renewal was denied and he was deported even though he was married to a United States citizen. He had filed an I-130 petition. So the imminency based on this record is from the Because the district court did not ask the government to apply the rules of 2243, they never were required to justify the legality of any restriction or custodial detention, custodial restriction on these applicants. So we do not have the facts, though there was clear indication that the government believed that they can detain people at any time, and there is no restraint. And I believe the reason why this is the detention itself was not as relevant or not entirely dispositive is because in Saint Cyr, the Supreme Court stated, and if I quote, the privilege of habeas corpus entitled the prisoners to a meaningful opportunity to demonstrate that he's being held pursuant to the erroneous application or interpretation of the relevant law. So in a non-court, a habeas where it is not laser. I mean, I think I'm not wrong in the questions directed to you have not really asked us to embark down the Supreme Court's decision in third say again, the questions really are more article three standing questions. Um, if if they're out there under supervision, what's your best case that they face imminent deportation that you're concerned about them being sent back to change country conditions is actually an imminent one. And related to that, how could even if you prevail, how would you get the redress ability that you want? Because what you're telling us in your in your complaint is you want screening immediately before deportation because conditions may have changed. But we have no idea when your clients are going to be deported. And the son that you refer to between arrest and deportation, he had three months and he did file a motion to reopen. So I guess I think the whole system is designed to give you what you're asking for. Well, in your honor, that is the problem. There is no screening. What the government and I think the district court confused is a motion to reopen, which is a statutory right and a non reform and screening. I think that maybe the what I confuse everybody was the these applicants were not seeking the right to be given time to weigh the decision on a motion to reopen or to have their order of removal eliminated. In fact, all the claims pleaded are requiring there's a condition that the order of removal be final and ready to be executed. And I believe that what was happening when they were called in for the last interview. Um, they will be. Let me just I want to separate this because what 12 52 G doesn't allow you to do, I think, is attack the execution of a valid order of removal. It may allow you to claim. In the meantime, I shouldn't be detained or I should have some sort of hearing. And so I'm trying to figure out what what eminence there is of your clients being detained. Well, the eminence is from the practice of the government of detaining people without any notice, without giving him any opportunity to put their affairs in order and what has happened. And I think what I see in this case, and that's why the records is important to me, is the government saying, Okay, your motion to reopen is still pending. Show up in another year. We'll see what the status of that is. And so I don't see in this case a threat that we're gonna swoop down and take you away. I see the government saying you're not high priority. Let's see what happens with your motion to reopen before we make any decisions. Why isn't that what this record presents us? Well, you know, I believe that since then, that's the position with the government has taken, perhaps in response to the action. But before the claim was filed, they refused to accept the application for a stay, which is the mechanism to prevent a detention normally, practically. And they tell them, No, no, you are not even allowed to file it. Just show up, I believe, on April 19. This is your final appearance. But when they showed up, when they showed up, am I am I incorrect? Didn't the immigration officer say to them, Oh, I see you have a motion to reopen pending. Let's let's come back in a while. That's it. It happens. And at the time it is, we had I showed up with them and I tried to convince the officer that there is a motion to reopen, and that's a statutory right. At the time, the officer agree. But we when you're asking for the eminence at the time with the applicants were filing in this challenging what they believe was an imminent and a real threat, there was clear that the government was not intending to continue in any way with any different. Your time is running out, and I want to take it to the 12 52 G issue. Don't all of your claims ultimately seek an order from the district court to block the execution of this removal order? No, Your Honor, we do not believe that any of the claims in this case requires. So absolutely not. In fact, I mean, you're if they were to take you if they were to pick your client up and put him on a plane tomorrow, you would say that you would ask for an injunction based on these claims against that. Wouldn't you? Well, I only just ask that the government should be prohibited from executing without providing the screening. That's the thing. You want the execution of the removal to be on your terms or on terms that you think are appropriate. But the statute says we don't get to interfere with the execution of this removal order. If you have had your process and you have a removal order, you may be removed. That is correct, because that's a discretionary. But the non reforming is a mandatory norm of international law that is not discretionary. If the government has an affirmative duty to screen an individual upon request, then they cannot say, well, we're going to execute. Where is that exception written in 1252 G? Well, 1252 G is written in terms of discretion. It is the discretion to execute. If something is illegal, then the government cannot claim that it's a discretion. So if the court is to accept that a non reforming is not a discretionary, but a mandatory. The statute says no court shall have jurisdiction to hear any cause of action or claim by or on behalf of an alien arising from the decision or action by the attorney general to execute removal orders against an alien. Where is there an exception to redo the legality of the removal and putting him on a plane? I lost you for a moment. So if I understand the question is the there is nothing in this particular provision that speaks of non reformer. It is asked. But that's my point. We don't get to read words into statutes that aren't there. But the cat, the Convention against Torture and the regulation that implemented, they become the law of the land. The moment that the convention was signed in the United States became a signature. So what? Why doesn't you if the government has a hearing on your motion to reopen, which apparently it said it's not going to do anything until that's adjudicated. Why haven't you gotten in effect a reform in here? Your clients are represented by council. You you get to show with whether country conditions have changed. Uh, why? Why haven't you in effect gotten exactly what the treaty provides? Well, emotion to reopen is the opposite of non reform. An emotion to reopen seeks to take away the order of removal. So if you are successful, you have a path to restart your removal proceedings. Non reformer under the convention simply screen or put a hold on the execution of the order to allow an individual to proceed and show if their life is in danger. Similar to how the convention is is applied. Do you think it's it's substantively different? In other words, there are people who would be eligible for who could not get their cases reopened because of changed country conditions, but nonetheless would be entitled to stay under the reform and regime. I believe because I understand your argument now. Uh, we've we've taken your clothes. We'll give you another minute or two at the end. Um, let's hear from the government. Thank you. May it please the court. Victor Lawrence on behalf of the U. S. Department of Justice and other appellees. This is a case about a family of petitioners who were ordered removed over 10 years ago and who were afforded considerable process prior to this court denying their petition. I mean, that's that's the problem here is that it was 10 years ago, and the statute says they're supposed to be awarded. The order is supposed to be days, and here we are 10 years later, and it still hasn't been carried out. And then that creates all these problems that what we do about change circumstances. And and so why hasn't it been carried out? Why are we here 10 years later? Well, a few reasons, Your Honor. As I'm sure you're aware, not every removal takes place in 90 days. I know that's a goal of the statute. But in this case, as the court is aware from the record, there were some grants of deferred action that continued along the way. And here we are 10 years later, that those the grants of deferred action expired for Mr. Bhandu in 2018. And then he was taken into custody later. But the short answer is not every removal happens within 90 days. There are a lot of people. 10 years is an awfully long time. Do you think when Congress wrote the jurisdiction stripping provision in 1252G, it envisioned that we'd be in a situation where it's 10 years after the fact? And and so we take it as a command that we ignore everything that happened in 10 years and act as if we're 90 days later? Well, I don't know that, you know, Congress had any thoughts about this particular type of situation when it wrote 1252G. But 1252G says exactly what it says, as Your Honor quoted earlier. But to further answer your prior question, you know, the government puts a priority on various removals from the country. And as has been discussed, there's a low priority for this particular family. Yes, it's dragged on for some time. I don't think the petitioners are complaining about the fact that they have not been removed yet. Can I can I want to ask you a factual question and get back to 1252G. With respect to the daughter, is she still on DACA status? Your Honor, I confess I don't know. As far as the complaint alleges she was she's on DACA, she was on DACA status. You don't know the answer to that? I don't know anything different with respect to that. With respect to 1252G, the Supreme Court's told us it only applies to three discrete decisions. Let's assume that this complaint says, I'm on 1231 release at the moment, just to call 1231A a release. Before that release is revoked and I'm put in detention, I'm entitled to some sort of due process. I'm not I'm just arguing about whether or not I get some process before I'm arrested or whether I get some process before my stay is revoked. Why does 1252G reach those decisions? Your Honor, because... Let me just give you a bit back. We hear habeas petitions all the time from people in detention who are saying, I'm not attacking my removal. I just want to be out on bond until I'm removed. So why isn't it, why as to those kinds of decisions, aren't we outside of 1252G land? They may not be good claims. I'm just trying to figure out whether or not we have jurisdictional. Right. So I think the answer to the court's question is, comes from the Jimenez decision by this court, which said that not only does 1252G attach to those three discrete things of commencing proceedings, adjudicating cases, and executing removal orders, but it also applies to the timing of the government's timing of that. So timing of the removal order. Timing of the execution. But let's assume, just for purposes of discussion, that tomorrow the government decides to revoke the 1231 status and put these people in a detention center. And they say, we don't belong in a detention center. We never got noticed. You never told us what we did wrong. Now, look, that may not be a good claim. I'm not looking at the merits of it, but they're not really then attacking the execution of their order of removal. They're attacking their detention, aren't they? Well, I mean, I think it's a semantic difference here because the whole- Well, no, it's a big difference. You've got a whole bunch of people detained that you're not removing. I mean, so it's a big difference being on the street or in the detention center in Ajo. Sure, but Your Honor, once the government, I'm sorry, but once the government has made the decision to detain at that point, the natural flow from that is removal. They're not detaining them for no particular purpose. They're detaining them for purposes of execution of their removal order. Mr. Lawrence, it might help me if you could step back. There are several arguments that you're making that would affirm the district court either as to some counts or as to all. Which is the government's primary argument? Are you saying that there's no habeas jurisdiction end of story here, or are you saying that these plaintiffs lack standing to request either because the issue isn't imminent or because what they're asking for isn't something we could even give them, or are you arguing for a 1252 G-bar affirmance? What's the cleanest way and the position you would press to us? Sure, Your Honor. So I think the court could take a number of routes here, but the cleanest way, I suppose, is the failure to state a claim because we argued failure to state a claim with respect to all eight counts in the First Amendment complaint. We argued no jurisdiction under 1252 G under six of the counts. We argued no standing under six of the counts as well. So, you know, we argued all those positions to the district court, and the district court accepted some and specifically said, like, for instance, for the counts about the motion to reopen, well, I'm going to find no standing here, I'm not even going to consider whether 1252 G applies to this or not, or whether a failure to state a claim does, but this court can do that. We have to do the jurisdictional issues first. We can't jump to the merits of failure to state a claim without doing the Article 3 standing and the 1252 G jurisdictional issues, correct? So, yes, typically the court looks at jurisdiction first and then failure to state a claim, but I suppose the court, if you want to- Do we have to do statutory jurisdiction first or only Article 3 jurisdiction first? Well, Article 3 is probably first, but in any event, I think what the court could do if it wanted to, and I'm not suggesting that this is the necessary method, but what the court could do is say, we're going to assume jurisdiction for a moment and find that failure to state a claim. Now, the steel company says we can't do that. That's exactly right. At least with respect to Article 3. Okay. I want to ask you about 1252, you know, what did anyone, because I didn't see it in the briefs, did anyone at any point look at the potential application of F2, which has an exception to injunctions? It says, unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law, was the applicability of that ever addressed? In the briefing and before the district court, I believe the government raised that issue and the court didn't bite on it, didn't discuss it in either of its opinion, and we didn't bring the issue up again in an appeal. Mr. Lawrence, I'm not sure you can help us on this, but what's the status of these petitioners? Put aside the son for the moment. I guess it's a variant of the question Judge Collins asked at the beginning. If the government is completely disinterested at the moment in deporting them or removing them, then I guess they don't face any imminent threat of danger. If the government is close to doing something, maybe they do. And the record doesn't tell me that, but you're the government. Where are we? Right. So number one, I think we have to rely on what is presented in the record. And I don't have any additional information beyond what's in the record with respect to the status of these individuals. But what I can say is I can agree with, I don't want to put words in anybody's mouth, but if there was a notion that perhaps they haven't shown an imminent threat, I would agree that the record does not demonstrate that. Let me tell you why I'm asking this question and maybe I'm out of line. These petitioners are not really attacking their orders of removal, according to their counsel, even though they may inherently be. What they want to do is make sure they get some notice before something happens. Isn't this, is this a case that might benefit from mediation? Can you sit down and reach some agreements with the other side about how things proceed from here? I don't think so, your honor, because they're asking for class claims and not only- No, I understand what they're asking for. I'm not, they're asking for a whole bunch of stuff. I'm just focusing on these four individuals and I don't know whether it's possible, but it just seems to me that if everybody knew that they're not going to be removed for another, until their motions to reopen are heard, that that might tell us that there's nothing to do here for us except wait to see what happens with those. And I really can't speak to my client's discretionary thoughts. You know, even if I knew them, they could change their thoughts tomorrow. I don't, even if I knew what they were thinking with respect to these individuals- I think isn't stripped down. Their complaints basically just saying, don't let happen to us what happened to our son. We've been here for decades and we have grandchildren that are now naturalized or U.S. citizens, and they're reaching for use cogens and customary international law because they feel that the motion to reopen might not protect them from changed country circumstances. And the only reassurance I saw in your brief was in a footnote, footnote four, where, correct me if I'm wrong, you're saying that, well, even their son had the opportunity to make that argument. Is that your answer to their claim that internationally customary law gives more than the U.S. law does? Well, first of all, I don't think the international law gives more than U.S. law does. What they're, what they're essentially asking for is, is a determination before they're removed about whether the changed country conditions are, are such that they rise to the level of persecution. But let's say instead of Indonesian Christians, they're Afghani Christians. And let's say the Taliban had just toppled the government. I have to assume your footnote four is reassuring us that even minutes before they're put on a plane, if the Taliban had just taken over that country and these are Christians, our law allowed them to present that changed circumstance. Am I correct or not? Do they have a last minute opportunity to say the Taliban just took over? I think so. They can file a motion to reopen with an emergency state cease day of removal, explaining the circumstances of why they believe they should be able to stay in the United States. So yes, they have avenues available to them still. But to answer, I just wanted to make sure I fully addressed Judge Hurwitz's question as well about, you know, do they deserve this additional process? And we would say the answer to that is- I'm not asking you whether, no, I'm not asking you whether they deserve an additional process. What I'm asking you is whether or not, since you've let them sit around here for 10 years without executing an order of removal, whether you could come to some accommodation with them about when they would get advance notice about when you intended to move. But I guess you're not, I can't tell the government what to do. I'm just suggesting that there might be a simpler way out of this case if both sides agree to that, but that's up to both sides. So I'm not going to press it any further. Right. But I think very simply the court could take any of three different postures in this case. As I said, we moved for failure to state a claim on all counts, even if we don't think there's jurisdiction under 1252G with respect to many of the counts, because they're affecting the timing of the execution of the removal order. We don't think they're standing on the majority of the counts because they haven't shown any sufficiently imminent threat of injury. When you say majority, where do you acknowledge they have standing as to any count? Well, I think we cannot move for lack of standing with respect to counts one and two with respect to Mr. Provodnino. So those are the two claims where we did not. That would be assessed for whether it's arbitrary and capricious as, right. And U.S. law is pretty clear that he can't request what he requested at the time he did. Yes, I mean, that was the policy of the agency that once you're detained, that you and they have and my opponent has not shown anything arbitrary or capricious about that particular policy. And the government followed the policy showing that, you know, that they weren't doing anything arbitrary and capricious. They were just following their own policy. And they also suggested there was government action by Mr. Provodnino's DACA being terminated. That's clearly not the case. He just let it expire. The government did nothing to put him in that position of his DACA being expired. You know, he had a chance before July of 2017 to seek renewal. He did not do that. And that's why it expired, not through any action of the government. I have one more question, Mr. Lawrence. There are motions to reopen pending, correct? Yeah, as far as I know, they're still pending, yes. Okay. I don't mean to be cagey with the court. I, just in case the board ruled on it yesterday or within the last hour. No, no, I understand. I'm not, I'm not, I'm not, I'm not holding you to the last 10 minutes. My question is this, were they told at the last meeting, which seemed to be in 2019 or 2018, that the government was, that they should just continue in their adjudicated? Right. So, so I heard the court ask that question also to my opposing counselors or assuming those facts. And I don't recall those facts being in the record, but I agree with you in principle that what happens during the, one of the things that can happen during the check-in is for the, for the, the individual themselves to say, Hey, listen, I have a motion to reopen out there and here's what it's about. And, and the, the officer who they're talking to can check that in the system if they choose to do so and say, okay. I'm trying to figure out, this is, this is an issue for me on the eminence issue. In other words, if they have an administrative proceeding pending and it's not the policy of the agency to remove somebody while motions for reopen are pending, then that may have some bearing on the eminence issue. So I'm trying to figure out what, what the government's position is with respect to these petitioners who have motions to reopen pending. Right. So, so I think the law is pretty clear and we cite the regulations that nothing about filing a motion to reopen automatically grants the state- I understand, no, I understand the law. I mean, maybe I do, at least I pretend to. I'm, I'm, I'm asking you, I'm asking you a very specific question. Uh, they say they were told when they showed up, well, come on, come on back and we'll see where your motion to reopen are stand, are, are standing. So I'm trying to figure out with respect to these four people, the United States government have, say, well, we might remove them beforehand or we, we, we intend to wait, what's your position? Well, I think the United States government retains the discretion to execute that removal order at any time. Okay. Man, thank you. Thank you. So let me make sure none of my colleagues have other questions. Nope. Thank you. We, we respect- We've taken you over, uh, counsel, let's put a couple of minutes on the clock for rebuttal for you. Thank you, Your Honor. Just to answer the factual question for the daughter, Daniela, she does continue to be on a valid DACA status. Uh, and as the last time I checked the motion to reopen that I filed, uh, which is the restated and amended one continues to be pending before the board. Um, none of the petitioner have been, uh, detained, detained. Uh, and then they continue to have a pending I-130 petition, which has been now upgraded because their son is a United States citizen and he's over 21. So that's the facts that I believe the court was inquiring about. The one thing I would like to, there's two things I want to make complete with that is this case, again, as I said, is a question of a process. Process this is due to people who are about to be deported or when the order of removal is to be executed. Uh, all that we are saying is missing from the regulation is the ability on an individual to actually receive that screening. They don't need to be seeking a motion to reopen, to have their removal proceeding restarted. That's not what non-refoulement requires. And a motion to reopen does not address the non-refoulement aspect. With respect to the DACA and whether it was... What about F2? Did you rely on F2? Cause it seems, F2 seems to be the route to deal with what you're suggesting. If you really think that it's a non-refoulement situation, then you could say that the execution of the order is prohibited as a matter of law. And I want an injunction against it, but you have to make the clear and convincing showing. That, that seems to be the way, but no one has discussed F2. No court that I'm aware of have interpreted that particular provision and we did not raise it. But that's what we ask in our relief is an injunction for the purposes of demonstrating or receiving the screening, not being allowed to remain in the United States, that was never a claim, nor did we ask the court to wait until a motion to reopen is granted or anything like that. I would not believe that that is permissible and never ask about it. And with respect to the DACA, what we've pled is a question under APA. And that is whether the policy of the government of saying, once we detain you, we have no jurisdiction to review the application is arbitrary and capricious. So the fact that it was published on a website shows that there's a final action that provides the district court with the rights to review. And then based on the administrative record decides whether that particular policy that is uniform is arbitrary and capricious because the fact that the government says we don't have jurisdiction is certainly reviewable by a district court, because DACA is not based on a statute or a regulation. It was a executive order that created a benefit and then they provided additional rule. And so the district court should have requested the administrative record to determine whether that particular uniform rule was arbitrary and capricious, not whether Michael Propagano was denied the benefit that he was entitled to, because he was clearly not entitled to anything. It was a discretionary relief. We challenge that particular final action under the APA. Any questions from our colleagues? No, thank you. Now we thank, Judge Higginson, go ahead. No, no. I was just thinking, thank you for asking, but no. Thank you to both counsel for their briefing and arguments in this case. And this case will be submitted.
judges: Higginson, Hurwitz, Collins